**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **BRENHAM NATIONAL BANK,**<br>***Plaintiff,*** | §<br>§<br>§ | |
| **LOIS AND JAMES KOLKHORST**<br>**D/B/A POWERFAM WASHES, LLC**<br>***Plaintiff/Intervenor*****,** | §<br>§<br>§<br>§ | **CIVIL ACTION NO.**<br>**1:25-CV-00263-ABD** |
| **v.** | §<br>§ | |
| **CIBANCO S.A.,**<br>***Defendant*** | §<br>§ | |

**DEFENDANT CIBANCO S.A.'S MOTION TO DISMISS**
**POWERFAM WASHES, LLC'S ORIGINAL COMPLAINT IN INTERVENTION**

# TABLE OF CONTENTS


I. SUMMARY OF ARGUMENT .......... 1

II. STATEMENT OF FACTS .......... 1

III. STANDARD .......... 3

IV. ARGUMENTS & AUTHORITIES .......... 5

A. The UCC Preempts Common Law Claims. .......... 5

1. PowerFam's common-law claims are preempted by the UCC. .......... 6

B. PowerFam Fails to State a Claim Against CIBanco that is Plausible. .......... 8

C. PowerFam Fails to Plead Fraud or Mistake with the Particularity Required by Rule 9(b). .......... 9

V. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 3, 4, 8, 9

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ........ 3

*Best v. Exxon Mobil Corp.*, No. H-09-0625, 2010 U.S. Dist. LEXIS 27886 (S.D. Tex. Mar. 23, 2010) ........ 5

*Bradford v. Nationwide Ins. Co. of Am*., No. 1:17-CV-1067-RP, 2018 U.S. Dist. LEXIS 90599 (W.D. Tex. May 31, 2018) ........ 10

*CIBanco, S.A. v. Quezada*, 656 S.W.3d 749 (Tex. App.—El Paso 2022, no pet.) ........ 2

*Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762 (5th Cir. 2019) ........ 4

*Crawford v. Bleeden*, No. 3:21-cv-2181, 2023 U.S. Dist. LEXIS 38489 (N.D. Tex. Mar. 8, 2023) ........ 9

*Herrmann Holdings Ltd. v. Lucent Technologies Inc*., 302 F.3d 552 (5th Cir. 2002) ........ 10

*Hirt v. Wells Fargo Bank, N.A.*, No. 20-cv-1616, 2021 U.S. Dist. LEXIS 28143 (S.D. Tex. Jan. 5, 2021) ........ 6

*META Sols. v. First State Bank of Brownsboro*, No. 19-CV-329, 2020 U.S. Dist. LEXIS 262091 (E.D. Tex. Apr. 16, 2020) ........ 6

*Molina-Aranda v. Black Magic Enterprises, L.L.C.*, 983 F.3d 779 (5th Cir. 2020) ........ 10

*Moody Nat'l Bank v. Texas City Dev.*, Co., 46 S.W.3d 373 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) ........ 5, 6, 7

*Serviacero Especiales SA DE CV v. JPMorgan Chase Bank, N.A.*, No. EDCV 21-380 JGB, 2021 U.S. Dist. LEXIS 202524 (C.D. Cal. May 20, 2021) ........ 6, 8

*United Galvanizing, Inc. v. Imperial Zinc Corp.,* 2011 U.S. Dist. LEXIS 36 (S.D. Tex. 2011) .... 6

*United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180 (2009) ........ 4, 5

*United States ex rel. Vavra v. Kellogg Brown & Root, Inc*., 727 F.3d 343 (5th Cir. 2013) ........ 3

*Valley Chili Props., LLC v. Truist Bank*, No. EP-23-CV-420-KC, 2023 U.S. Dist. LEXIS 212738 (W.D. Tex. Nov. 29, 2023) ........ 6, 8

*Williams v. WMX Techs., Inc*., 112 F.3d 175 (5th Cir. 1997) ........ 4, 5

### Statutes

TEX. BUS. & COM. CODE § 4A.102 .......... 5

TEX. BUS. & COM. CODE § 4A.104(1) .......... 5

TEX. BUS. & COM. CODE § 4A.207 .......... 7

EX. BUS. & COM. CODE § 4A.207(b)(1) .......... 7,8

TEX. BUS. & COM. CODE § 4A.207(d) .......... 7, 8

### Rules

FED. R. CIV. P. 12(b)(6) .......... 3

FED. R. CIV. P. 8(a)(2) .......... 3

FED. R. CIV. P. 9(b) .......... 4, 9

Under Federal Rule of Civil Procedure 12(b)(6), Defendant CIBanco S.A. ("CIBanco") moves to dismiss all claims asserted against it by Intervenors Lois and James Kolkhorst d/b/a PowerFam Washes, LLC ("PowerFam") in their Original Complaint in Intervention ("Complaint") (ECF 79), and in support shows as follows:

## I. SUMMARY OF ARGUMENT

PowerFam asserts claims against CIBanco for money had and received, unjust enrichment, and declaratory judgment. Complaint, ¶¶ 12 ("Money Had and Received"), 13-17 ("Unjust Enrichment"), ¶ 18 ("Declaratory Judgment"). These claims relate to a wire transfer initiated by PowerFam from its account with Plaintiff Brenham National Bank ("BNB") to a CIBanco correspondent bank account at Citibank, N.A. ("Citibank") using allegedly fraudulent wire instructions. At its core, the Complaint seeks to hold CIBanco responsible for the allegedly fraudulent or mistaken acts of others that caused the wire transfer. PowerFam notably fails to plead any facts showing any improper conduct or knowledge by CIBanco related to the wire transfer.

PowerFam's claims against CIBanco should be dismissed because they (1) are preempted by Article 4A of the Uniform Commercial Code ("UCC"); (2) are not plausible under Rule 8 and the *Twombly/Iqbal* pleading standard; and (3) do not plead fraud or mistake with particularity as required by Rule 9(b).

## II. STATEMENT OF FACTS

PowerFam is a Texas limited liability. Complaint, ¶ 1. While in the process of building a car wash, PowerFam requested wiring instructions to complete an equipment purchase. *Id.* at ¶ 6. A fraudster pretending to be the equipment supplier provided fraudulent wiring instructions to PowerFam. *Id.* PowerFam sent the wiring instructions to its bank, BNB, who then used them to transfer $360,801.37 from BNB to Citibank, N.A. ("Citibank"). *Id.* at ¶ 7. Citibank deposited the money into CIBanco's account with Citibank. *Id.* at ¶ 8.

The account that received the wire transfer is a CIBanco account maintained by Citibank. *Id*. This bank account is a "correspondent account" used to facilitate international trade and foreign exchange. *See* ECF 26-1, Declaration Roberto Pérez Estrada, ¶ 11. A Texas appellate court recently summarized CIBanco's foreign banking role as follows:

> CIBanco is a full-service banking organization incorporated under the laws of Mexico. Its principal place of business is in Mexico City. Employing over 2,700 employees, it operates multiple banking branches throughout Mexico. No offices or branches are in Texas. Moreover, it neither owns nor leases real property in Texas, nor owns subsidiary companies in the state. Finally, CIBanco does not advertise or market its services in Texas. Nonetheless, to facilitate international trade for its banking customers, CIBanco maintains a correspondent bank account with Citibank, N.A. (Citibank). Generally, CIBanco's customers receive payments from U.S. trading partners via wire transfers made in U.S. dollars. Those transfers are deposited to CIBanco's correspondent account. On receipt of funds, CIBanco typically credits customer accounts in Mexican pesos for an equivalent amount of such wire transfers.

*CIBanco, S.A. v. Quezada*, 656 S.W.3d 749, 753 (Tex. App.—El Paso 2022, no pet.); *see also* ECF 26-1, ¶¶ 3-12.

Upon learning of the alleged fraud, BNB contacted Citibank to demand return of the funds, but Citibank refused to do so. Complaint, ¶ 9. On January 3, 2024, BNB filed a petition and application for temporary restraining order and temporary injunction in Harris County District Court. *Id.* On January 4, 2024*,* the Harris County District Court issued a TRO that instructed Citibank to place a hold on the funds. *Id.* The case was then removed to the Southern District of Texas and later transferred to this Court. *Id.* at ¶ 10. Along the way, $360,801.37 was interpleaded and sits in the registry of the Court. *Id.*

In March 2024, BNB filed its First Supplement to Its Original Complaint (EC No. 16), which asserts claims against Citibank and CIBanco for money had and received, unjust enrichment, and declaratory judgment. In April 2024, BNB dismissed with prejudice its claims

against Citibank. ECF 18. In July 2024, CIBanco moved to dismiss BNB's claims. ECF 26. Briefing on this motion completed in August 2024. This motion is pending.

PowerFam moved to intervene in January 2026. ECF 62. Intervention was granted in March 2026. ECF 71. Although PowerFam's Complaint was file-stamped February 23, 2026, it was not entered on the docket until August 27, 2026. ECF 79.

PowerFam's Complaint asserts three claims against CIBanco for: (1) money had and received, (2) unjust enrichment, and (3) declaratory judgment. Complaint, ¶¶ 12–18. Each claim is premised on the funds PowerFam transferred from BNB to CIBanco's correspondent account at Citibank and ultimately credited to CIBanco's customer.

## III. STANDARD

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." When analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *United States ex rel. Vavra v. Kellogg Brown & Root, Inc.*, 727 F.3d 343, 346 (5th Cir. 2013) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). A claim is plausible and more than merely possible when the pleading contains factual content sufficient to permit the court to make a reasonable inference that the defendant is liable for misconduct alleged in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But a court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). While detailed factual allegations are not required, the facts alleged "must be enough to raise a right to relief above the speculative level." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555).

Under Rule 9(b), in "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This is "an exception to Rule 8(a)'s simplified pleading that calls for a 'short and plain statement of the claim.'" *United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180, 185 (2009). The "particularity demanded by Rule 9(b) is supplemental to the Supreme Court's . . . interpretation of Rule 8(a) requiring 'enough facts [taken as true] to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). In alleging fraud, a plaintiff must plead "the time, place and contents of the false representation[], as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Id.* (quoting *United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (1999)). "[T]he who, what, when, and where must be laid out before access to the discovery process is granted." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997). "In cases of fraud, Rule 9(b) has long played that screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later." *Grubbs*, 565

F.3d at 185. The Fifth Circuit applies Rule 9(b) to fraud claims "with force, without apology." *Williams*, 112 F.3d at 178.

"A defendant may raise an affirmative defense in a Rule 12(b)(6) motion to dismiss when 'the facts that give rise to the defense are clear from the face of the complaint.'" *Best v. Exxon Mobil Corp.*, No. H-09-0625, 2010 U.S. Dist. LEXIS 27886, at *6 (S.D. Tex. Mar. 23, 2010).

## IV. ARGUMENTS & AUTHORITIES

The Court should dismiss PowerFam's Complaint against CIBanco for three reasons. First, PowerFam's claims are preempted by the Uniform Commercial Code. Second, based on the facts alleged, PowerFam's claims against CIBanco are not plausible. Third, PowerFam fails to state with particularity the alleged fraud or mistake as required by Rule 9(b).

### A. The UCC preempts common law claims.

PowerFam's claims for money had and received, unjust enrichment, and declaratory judgment are all based on the wire transfer. *See* Complaint, ¶¶ 12 ("fraudulently wired money"), 13 ("fraudulently wired funds"), 14 ("wire transfer"), 15 ("transferred funds"). When the UCC governs a particular topic—such as wire transfers—it preempts all common-law causes of action related to that topic. *Moody Nat'l Bank v. Texas City Dev.*, Co., 46 S.W.3d 373, 378-79 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) ("Common law claims are precluded when a claim would impose liability inconsistent with any of the Article's provisions") (citing TEX. BUS. & COM. CODE § 4A.102, cmt.).

Chapter 4A of the Texas Business and Commerce Code incorporates the UCC and explicitly covers "funds transfers." TEX. BUS. & COM. CODE § 4A.102. A funds transfer is "the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order" and concluding with the "acceptance by the beneficiary's bank . . . for the benefit of the beneficiary." TEX. BUS. & COM. CODE § 4A.104(1).

Article 4A creates "precise and detailed rules" for funds or wire transfers that "assign responsibility, define behavioral norms, allocate risks and establish limits of liability." *META Sols. v. First State Bank of Brownsboro*, No. 19-CV-329, 2020 U.S. Dist. LEXIS 262091, at *3 (E.D. Tex. Apr. 16, 2020).

Because Article 4A creates a precise system for dealing with wire transfers, a plaintiff cannot assert common-law claims incongruent with that system. Indeed, Article 4A "exclusively determines[s] 'the rights, duties, and liabilities' of parties in any situation covered by the particular provisions of the Article." *Hirt v. Wells Fargo Bank, N.A.*, No. 20-cv-1616, 2021 U.S. Dist. LEXIS 28143, at *3 (S.D. Tex. Jan. 5, 2021), report and recommendation adopted, 2021 U.S. Dist. LEXIS 26295 (S.D. Tex. Feb. 11, 2021). In other words, Article 4A sets out the duties that banks owe with respect to wire transfers and preempts all other common-law claims. *See United Galvanizing, Inc. v. Imperial Zinc Corp.,* 2011 U.S. Dist. LEXIS 36 at *25 (S.D. Tex. 2011) ("The UCC supersedes the common law."). Any state law claims that seek to burden banks with duties or liabilities additional to the UCC are expressly preempted. *See Valley Chili Props., LLC v. Truist Bank*, No. EP-23-CV-420-KC, 2023 U.S. Dist. LEXIS 212738, at *7 (W.D. Tex. Nov. 29, 2023) ("Plaintiff cannot remediate its regrettable situation through a non-UCC theory of recovery because this would circumvent the system mandated by Article 4A.").

1. <u>PowerFam's common-law claims are preempted by the UCC.</u>

The threshold question for preemption is whether the conduct complained of is related to a funds transfer. *See Moody Nat'l Bank*, 46 S.W.3d at 378. There is no doubt that common-law claims against a beneficiary bank like CIBanco for accepting an allegedly fraudulent wire transfer in the circumstances alleged in the Complaint are covered—and therefore preempted—by Article 4A. *See Serviacero Especiales SA DE CV v. JPMorgan Chase Bank, N.A.*, No. EDCV 21-380 JGB, 2021 U.S. Dist. LEXIS 202524 (C.D. Cal. May 20, 2021) (dismissing claims against

beneficiary bank that were premised upon plaintiff initiating wire transfer to fraudster's account at beneficiary bank as preempted by UCC).

As noted above, the UCC allocates the risk of loss between parties involved in a wire transfer. *Moody Nat'l Bank*, 46 S.W.3d at 378. This includes situations where an imposter provides fraudulent wiring instructions to the sender and a wire is made to the imposter's bank account. Article 4A expressly places responsibility in such instances on the person sending the wire—the sender (here, PowerFam) is the one who must ensure that they are sending the money to the intended recipient. *See* TEX. BUS. & COM. CODE § 4A.207(b)(1) (on receiving a wire order, a bank "need not determine whether the name and number refer to the same person," but rather may solely "rely on the number as the proper identification of the beneficiary of the order."). If the bank pays the transfer to the imposter, then the originator or originator's bank may seek recovery only from the imposter (not from the imposter's bank). *Id*. at § 4A.207(d).

The official commentary to Section 4A.207 further illustrates the statute's intended reach. It discusses a hypothetical scenario involving an imposter fraudulently directing a mutual fund to wire funds to the imposter's account. TEX. BUS. & COM. CODE § 4A.207 cmt. 2. In the hypothetical, the defrauded mutual fund instructs the originator's bank to make a wire transfer to the beneficiary bank, which then makes the payment to the imposter's account as directed. *Id*. Applying Section 4A.207(b)(1) to the hypothetical, the commentary states that "Beneficiary's Bank will pay on the basis of the number without knowledge of the conflict. In that case subsection (c) *places the loss on either Mutual Fund or Originator's Bank*." *Id*. at cmt. 3 (emphasis added). It is "not unfair to assign the loss to Mutual Fund because it is the person who dealt with the impostor (sic) and it supplied the wrong account number." *Id*.

The UCC thus envisions situations precisely like the present one, in which "an originator [here, PowerFam] is fraudulently tricked into wiring money to the account of an unintended beneficiary." *Valley Chili Props.*, 2023 U.S. Dist. LEXIS 212738, at *8. "Section 25-4A-207 resolves this issue." *Id.* Chapter 4A allocates the risk in this transaction to BNB's customer PowerFam (as the originator) or BNB (as the originator's bank). TEX. BUS. & COM. CODE § 4A.207(b)(1). Thus, BNB or PowerFam may seek recovery against CIBanco's customer (assuming it is the alleged fraudster)—but *not* CIBanco. *Id.* at § 4A.207(d); *see also Serviacero Especiales SA DE CV*, 2021 U.S. Dist. LEXIS 202524, at *11 (noting plaintiff could recover against fraudster under UCC but dismissing claim against fraudster's bank).

Because PowerFam's common law claims are "inconsistent with" the "rights, duties, and liabilities" in Article 4A, *see Valley Chili Props.*, 2023 U.S. Dist. LEXIS 212738, at *8, these claims are preempted by the UCC and the Complaint should be dismissed.

B. <u>PowerFam fails to state a claim against CIBanco that is plausible.</u>

Alternatively, PowerFam's claims against CIBanco are not plausible based on the facts alleged in the Complaint. A claim is plausible and more than merely possible when the pleading contains factual content sufficient to permit the court to make a reasonable inference that the defendant is liable for the misconduct alleged in the complaint. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

PowerFam's Complaint pleads insufficient facts to reasonably infer that CIBanco is liable for the misconduct alleged in the Complaint. At most, the pleaded facts show that the fraudster—not any bank—is liable to PowerFam. PowerFam alleges it was tricked by the fraudster into using fraudulent wiring instructions, but pleads no facts showing CIBanco played any role in this alleged

fraud or mistake. Based on these facts, PowerFam's claims against CIBanco are not possible—much less plausible. They are speculative.

The Court should ignore the Complaint's legal conclusion that, "on information and belief," CIBanco "knew or should have known that the funds were transferred on behalf of an individual seeking to defraud PowerFam." Complaint, ¶ 16. *See Iqbal*, 556 U.S. at 678 (court is "not bound to accept as true a legal conclusion couched as a factual allegation"). PowerFam pleads no facts showing that CIBanco "knew or should have known" that the funds were transferred on behalf of the fraudster. Further, PowerFam does not even allege that CIBanco's customer was the fraudster, that CIBanco knew who the fraudster was at the time of the wire transfer, or that CIBanco knows who the fraudster is today. The only *plausible* conclusion to draw from the pleaded facts is that the fraudster used three banks (BNB, Citibank, and CIBanco) to defraud PowerFam, but that no bank did anything wrong.

Because PowerFam's claims are not plausible, the Complaint should be dismissed.

C. PowerFam fails to plead fraud or mistake with the particularity required by Rule 9(b).

PowerFam fails to plead fraud or mistake with the particularity required by Rule 9(b). *See* FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). When a plaintiff incorporates allegations of fraud or mistake into claims that do not inherently require allegations of fraudulent or mistaken conduct, Rule 9(b) applies to those claims. *See, e.g., Crawford v. Bleeden*, No. 3:21-cv-2181, 2023 U.S. Dist. LEXIS 38489, at *13 (N.D. Tex. Mar. 8, 2023) (applying Rule 9(b)'s requirements to equitable claims for unjust enrichment and money had and received). Because PowerFam's three claims are based on the underlying assertion that CIBanco benefitted from a fraud or mistake, these claims are subject to Rule 9(b).

To satisfy Rule 9(b), plaintiffs "'must state with particularity the circumstances' of the allegedly fraudulent conduct . . . [P]laintiffs alleging fraud must additionally describe, in short, 'the who, what, when, and where' supporting their fraud allegations." *Molina-Aranda v. Black Magic Enterprises, L.L.C.*, 983 F.3d 779, 784 (5th Cir. 2020). The Fifth Circuit "interprets Rule 9(b) strictly." *Herrmann Holdings Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002). Courts in the Fifth Circuit accordingly apply Rule 9(b) rigorously in dismissing fraud or mistake-based claims lacking detail. *See, e.g., Bradford v. Nationwide Ins. Co. of Am.*, No. 1:17-CV-1067-RP, 2018 U.S. Dist. LEXIS 90599, at *7 (W.D. Tex. May 31, 2018) (dismissing claim where complaint provided no "details about when and where such a statement was made").

PowerFam's Complaint violates Rule 9(b)'s requirements in virtually every respect. Not only does PowerFam fail to identify *who* provided it the fraudulent wiring instructions, PowerFam also fails to identify *where* this representation occurred and *when* it occurred. PowerFam further pleads no facts showing that CIBanco played any role in the alleged fraud or mistake.

Because PowerFam fails to plead fraud or mistake with particularity, the Complaint should be dismissed.

## V. CONCLUSION

PowerFam's efforts to pin liability for an alleged fraud or mistake on a bank are misplaced. While PowerFam may have valid claims against the alleged fraudster, it does not have valid claims against CIBanco. Not only are PowerFam's claims against CIBanco preempted by the UCC, but these claims are not plausible and not pleaded with the particularity required by Rule 9(b). For these reasons, the Court should dismiss PowerFam's Complaint with prejudice.

Dated: September 11, 2026

Respectfully submitted,

*/s / John S. "Jack" Edwards, Jr.*

John S. "Jack" Edwards, Jr.
AJAMIE LLP
Texas Bar No. 24040851
Pennzoil Place - South Tower
711 Louisiana, Suite 1600
Houston, TX 77002
Telephone: (713) 860-1600
Facsimile: (713) 860-1699
jedwards@ajamie.com

**ATTORNEY FOR CIBANCO S.A.**

**CERTIFICATE OF SERVICE**

I certify that on September 11, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send electronic notification of the filing to all counsel of record.

*/s/ John S. "Jack" Edwards, Jr.*
John S. "Jack" Edwards, Jr.