**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **BRENHAM NATIONAL BANK** | § | |
| **Plaintiff,** | § | |
| | § | |
| **LOIS AND JAMES KOLKHORST** | § | |
| **D/B/A POWERFAM WASHES, LLC** | § | **CIVIL ACTION NO.** |
| **Plaintiff/Intervenor,** | § | **1:25-CV-00263-ABD** |
| | § | |
| **VS.** | § | |
| | § | |
| | § | |
| **CIBANCO, S.A.** | § | |
| **Defendant.** | § | |

**PLAINTIFF/INTERVENOR POWERFAM WASHES, LLC'S RESPONSE TO DEFENDANT, CIBANCO S.A.'S MOTION TO DISMISS POWERFAM WASHES, LLC'S ORIGINAL COMPLAINT IN INTERVENTION**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff/Intervenors, LOIS AND JAMES KOLKHORST d/b/a POWERFAM WASHES, LLC ("PowerFam"), and files this Response to Defendant, CIBanco S.A.'s Motion to Dismiss PowerFam Washes, LLC's Original Complaint in Intervention. In support of this response, PowerFam shows as follows:

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

I. INTRODUCTION AND BACKGROUND FACTS ........ 1

II. STANDARD OF REVIEW ........ 2

III. OBJECTION TO EVIDENCE ........ 3

IV. ARGUMENT AND AUTHORITIES ........ 3

A. The UCC does not preempt PowerFam's Claims. ........ 3

i. The UCC complements common law claims ........ 3

ii. The UCC does not preempt PowerFam's claims because PowerFam alleges CIBanco is holding funds it improperly gained. ........ 6

B. PowerFam states a plausible claim against CIBanco ........ 7

C. PowerFam's Complaint is not required to meet the pleading standards required by Federal Rule of Civil Procedure 9(b). ........ 8

D. In the alternative, PowerFam requests leave to file a first amended complaint to cure any defects. ........ 11

V. PRAYER ........ 12



#172890

## TABLE OF AUTHORITIES

**Cases**

*Amoco Prod. Co. v. Smith*, 946 S.W.2d 162 (Tex. App.—El Paso 1997, no writ)........................ 8

*Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996) ............................................................ 2, 7, 8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)................................................................ 2

*City of Corpus v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247 (Tex. App.—Corpus Christi 1987, writ denied) ......................................................................................................... 9

*Consorcio Indus. de Construccion Titanes, S.A. de C.V. v. Wells Fargo Bank, N.A.*, No. 3:10-CV-2111-K, 2012 WL 13019678 (N.D. Tex. 2012) ........................................................... 4

*Curb Planet, Inc. v. Wells Fargo Bank*, No. 4:20-CV-2233, 2022 WL 4486412, (S.D. Tex. 2022), report and recommendation adopted sub nom. *Curb Planet, Inc. v. Wells Fargo Bank, N.A.*, No. CV H:20-2233, 2022 WL 4490178 (S.D. Tex. 2022) ................................................ 4

*Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734 (S.D. Tex. 1998) ................................. 9

*Ison-Newsome v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 3:22-CV-2805-L-BH, 2023 WL 5022287 (N.D. Tex. July 21, 2023), *report and recommendation adopted*, No. 3:22-CV-2805-L, 2023 WL 5022681 (N.D. Tex. Aug. 7, 2023) ........................................................... 6

*Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014) (per curiam) ......................................... 2, 7

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009).................................................. 2, 3

*Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765 (5th Cir. 1999).........................................................................................................11

*META Sols. v. First State Bank of Brownsboro*, No. 6:19-CV-329-JDK, 2020 WL 12991132 (E.D. Tex. Apr. 16, 2020) ........................................................................................................... 6

*Moody Nat'l Bank v. Tex. City Dev., Ltd.*, 46 S.W.3d 373 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)................................................................................................................... 5, 7

*Peerless Ins. Co. v. Tex. Commerce Bank-New Braunfels, N.A.*, 791 F.2d 1177 (5th Cir. 1986).... 5

*Plano Lincoln Mercury, Inc. v. Roberts*, 167 S.W.3d 616 (Tex. App.—Dallas 2005, no pet) ........ 4

*Ross v. Bank of Am. N.A.*, 693 F. Supp. 2d 692 (S.D. Tex. 2010) .................................................. 4

*Serviacero Especiales SA DE CV v. JPMorgan Chase Bank, N.A.*, No. EDCV 21-380 JGB, 2021 WL 4805447 (C.D. Cal 2021)........................................................................................... 5

*Stone v. First City Bank of Plano, N.A.*, 794 S.W.2d 537 (Tex. App.—Dallas 1990)..................... 5

*Villarreal v. First Presidio Bank*, 283 F. Supp. 3d 548 (W.D. Tex. 2017) ..................................... 4

*Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265 (Tex. App.—San Antonio 2004, pet. denied)........................................................................................................................... 9

**Statutes**

Tex. Bus. & Com. Code § 3.118(g)(1)............................................................................................ 4

Tex. Bus. & Com. Code Ann. § 1.103(a)........................................................................... 3

Tex. Bus. & Com. Code Ann. § 1.103(b)........................................................................... 4

Tex. Bus. & Com. Code Ann. § 4A.207(b)(1) ................................................................... 7

**Rules**

Fed. R. Civ. P. 12(d)........................................................................................................... 3

Fed. R. Civ. P. 56(d)........................................................................................................... 3

Fed. R. Civ. P. 9(b)............................................................................................................. 9

**Regulations**

90 Fed. Reg. 27,770 (June 30, 2025).................................................................................11

90 Fed. Reg. 30,826 (July 11, 2025)..................................................................................11

90 Fed. Reg. 40,974 (Aug. 22, 2025).................................................................................11

91 Fed. Reg. 20362 (Apr. 16, 2026) ................................................................................ 12

## I.
## INTRODUCTION AND BACKGROUND FACTS

PowerFam's Complaint in Intervention raises three causes of action: money had and received, unjust enrichment, and declaratory judgment. Intervenor's Complaint, Dkt. 79 (hereinafter, "Intervenor's Complaint"). Underlying all three causes of action is the same pattern of facts, as alleged in the Interventor's Complaint. Those facts are simple, but simple does not equate to insufficient.

The Interventor's Complaint alleges that PowerFam was in the process of building a car wash when it received fraudulent wiring instructions by an individual or individuals posing as an equipment supplier. Intervenor's Complaint at ¶ 6. PowerFam thought it was paying a legitimate invoice, but instead, the wiring transfer, which was completed on or about December 11, 2023, sent the funds to an account owned by Defendant CIBanco and maintained by Citibank, N.A. *Id.* at ¶ 7, Citibank deposited the wired funds into CIBanco's account. *Id.* at ¶ 8.

Brenham National Bank ("BNB"), which was the originating bank, filed suit on January 3, 2024, seeking a temporary restraining order and injunction. *Id.* at ¶ 9. That temporary restraining order was granted on January 5, 2024, and a hold was placed on the funds that were, at the time, sitting in CIBanco's bank account. *Id.* Since then, the funds—which are in the amount of $360,801.37—were interpleaded. *Id*. at ¶¶ 7, 10. The funds at question in this case currently sit in the registry of the Court. *Id.* Those funds were interpleaded because the funds do not belong to CIBanco. They rightfully belong to PowerFam. If they are released back to CIBanco, then CIBanco will have, in its possession, funds that rightfully belong to PowerFam.

The Court is now tasked with determining who has superior claim to the stolen funds, which are currently sitting in the Court's registry. CIBanco seeks to have PowerFam's claims dismissed on the theory that the UCC preempts these claims. But, as alleged by PowerFam in its



#172890

Complaint, that is simply not the case. The UCC does not preempt the claims for two reasons: (1) PowerFam is seeking to recover money that, should it be released to CIBanco, CIBanco unjustly maintains; and (2) PowerFam has reason to believe that CIBanco knew or should have known that the funds were being fraudulently wired. And this knowledge, on the part of CIBanco, removes this from a simple case of mistaken wiring instructions. PowerFam has properly pled its causes of actions, and this case should go forward.

## II.
## STANDARD OF REVIEW

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the district court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). And, "the court may not look beyond the pleadings in ruling on the motion." *Id.* at 197. "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Id.* at 556 (cleaned up). In examining the requirements of Federal Rule of Civil Procedure 8, the Supreme Court has explained "[f]ederal pleading rules call for a short and plain statement of the claim showing that the pleader is entitled to relief, they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam) (cleaned up). In short, the complaint must, on its face, contain enough factual matter that, if taken as true, raises a reasonable expectation that discovery will reveal relevant evidence of each element of the claim. *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).



#172890

## III.
## OBJECTION TO EVIDENCE

As an initial matter, PowerFam objects to CIBanco's reference to the Declaration of Robert Perez Estrada as irrelevant and improper at this stage of the proceeding. Under Rule 12(b)(6), CIBanco's evidence cannot be considered—the Court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in PowerFam's favor. *Lormand*, 565 F.3d at 257. Therefore, the reference to Mr. Estrada's declaration, the declaration itself, and any conclusions drawn from it are irrelevant and should be stricken. Alternatively, if the Court considers the declaration, the motion must be treated as one for summary judgment, and PowerFam must be given a reasonable opportunity to present all pertinent material, including through discovery. *See* Fed. R. Civ. P. 12(d), 56(d).

## IV.
## ARGUMENT AND AUTHORITIES

### A. The UCC does not preempt PowerFam's Claims.

#### i. The UCC complements common law claims.

Contrary to CIBanco's claims, the UCC itself does not automatically preempt common law claims. The Texas legislature intended the UCC to be "liberally construed" such that "the principles of law and equity" can "supplement . . . provisions [of the UCC]." Tex. Bus. & Com. Code Ann. § 1.103(a), (b). As the comments to the UCC note, "[t]he UCC was drafted against the backdrop of existing bodies of law, including the common law and equity," and the common law is meant to supplement the UCC. Id. at cmt. 2. The UCC only preempts where the common law would be inconsistent with the UCC itself. Indeed, when faced with questions of preemption, the Court must consider whether additional facts or conduct potentially lie outside the scope of the

UCC. *See Consorcio Indus. de Construccion Titanes, S.A. de C.V. v. Wells Fargo Bank, N.A.*, No. 3:10-CV-2111-K, 2012 WL 13019678, at *3 (N.D. Tex. 2012).

Indeed, the UCC itself assumes that equitable claims like money had and received and unjust enrichment can still be made alongside the UCC. Chapter 3 of the Code, for example, prescribes a three-year limitations period for "an action for money had and received." Tex. Bus. & Com. Code Ann. § 3.118(g)(1). Rather than fully preempt claims like money had and received and unjust enrichment, the UCC clearly assumes that such claims may exist even where the claims implicate the UCC. *See Curb Planet, Inc. v. Wells Fargo Bank*, No. 4:20-CV-2233, 2022 WL 4486412, at *3 (S.D. Tex. 2022), report and recommendation adopted sub nom. *Curb Planet, Inc. v. Wells Fargo Bank, N.A.*, No. CV H:20-2233, 2022 WL 4490178 (S.D. Tex. 2022) ("Nothing in the plain text of the statute makes clear that a claim for unjust enrichment is preempted.").

Furthermore, courts across Texas have analyzed this issue and found that common law claims, like money had and received and unjust enrichment, are not preempted by the UCC. *See, e.g.*, *Villarreal v. First Presidio Bank*, 283 F. Supp. 3d 548, 554 (W.D. Tex. 2017) ("Defendants appear to posit that the existence of a Code section that governs bank deposits is sufficient to 'supplant' a claim for money had and received related to certificates of deposit. This is error. Absent a conflict with a particular provision, '[c]ommon-law principles complement the Uniform Commercial Code.'" (quoting *Plano Lincoln Mercury, Inc. v. Roberts*, 167 S.W.3d 616, 624 (Tex. App.—Dallas 2005, no pet)); *Ross v. Bank of Am. N.A.*, 693 F. Supp. 2d 692, 696 n.1 (S.D. Tex. 2010) ("The revised UCC contemplates that actions for money had and received will be available. Section 3.118(g) specifically provides that such claims are subject to a three-year statute of limitations. The goals of the UCC can be accomplished by tailoring inconsistent common-law remedies to meet the UCC requirements."); *Stone v. First City Bank of Plano, N.A.*, 794 S.W.2d

537, 543 (Tex. App.—Dallas 1990) ("the implied contract action for money had and received has survived the [Texas Business and Commerce] Code's adoption"); *Peerless Ins. Co. v. Tex. Commerce Bank-New Braunfels, N.A.*, 791 F.2d 1177, 1180 (5th Cir. 1986) (holding that a common-law action for money had and received is not displaced by adoption of the UCC). Although these decisions arose under other chapters of the Code, they apply the same rule that governs Article 4A: the Code displaces a common-law claim only where the claim would impose liability inconsistent with a particular provision. *See Moody Nat'l Bank v. Tex. City Dev., Ltd.*, 46 S.W.3d 373, 378 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

The cases cited by CIBanco argue that the UCC preempts the common law claims being made by PowerFam do not support its claim. *Moody*, for example, held a negligence claim was displaced because Article 4A's notification provision, section 4A.404(b), addressed the bank's conduct and supplied the remedy. 46 S.W.3d at 379. The court did not hold that Article 4A displaces every claim touching a funds transfer; it held that "[c]ommon law claims are precluded when a claim would impose liability inconsistent with any of the Article's provisions." Id. at 378. And *Serviacero Especiales SA DE CV v. JPMorgan Chase Bank, N.A.*, involved a claim of conversion. No. EDCV 21-380 JGB, 2021 WL 4805447 (C.D. Cal 2021). Furthermore, CIBanco relies exclusively on Article 4A. But even Article 4A conditions a bank's right to rely on an account number on the bank's lack of knowledge: a beneficiary's bank may rely on the number "if the beneficiary's bank does not know that the name and number refer to different persons or if the funds transfer is processed by the beneficiary bank in a fully automated manner." Tex. Bus. & Com. Code Ann. § 4A.207(b)(1). PowerFam alleges that CIBanco knew or should have known that the funds were transferred on behalf of an individual seeking to defraud PowerFam. Intervenor's Complaint ¶ 16. What CIBanco knew, and how the transfer was processed, are

questions of fact that cannot be resolved on the pleadings, and a finding of preemption at this stage is not warranted.

**ii. <u>The UCC does not preempt PowerFam's claims because PowerFam alleges CIBanco is holding funds it improperly gained.</u>**

CIBanco filed an almost identical motion to dismiss, along the exact same grounds, against Plaintiff BNB. BNB has filed a response, outlining the reasons that the UCC itself does not preempt the common law claims being made by both BNB and PowerFam. *See* Dkt. 30.[1] But there are additional reasons why the UCC does not preempt PowerFam's claims. "Courts have generally recognized that Article 4A [of the UCC] does not preempt common law claims arising from conduct that occurred outside the wire transfer process." *Ison-Newsome v. JPMorgan Chase Bank, Nat'l Ass'n,* No. 3:22-CV-2805-L-BH, 2023 WL 5022287, at *5 (N.D. Tex. July 21, 2023), *report and recommendation adopted*, No. 3:22-CV-2805-L, 2023 WL 5022681 (N.D. Tex. Aug. 7, 2023); *META Sols. v. First State Bank of Brownsboro*, No. 6:19-CV-329-JDK, 2020 WL 12991132, at *4 (E.D. Tex. Apr. 16, 2020) ("Because META alleges that the Bank is liable at least in part for its conduct before and after the funds transfer . . . META's common law claims based on this conduct are not preempted.").

PowerFam alleges that CIBanco "knew or should have known" that one of its clients was attempting to use CIBanco to fraudulently obtain funds. CIBanco's knowledge of criminal actors utilizing its services is an act that occurs "outside the wire transfer process." *Intervenor's Complaint* at ¶ 16. This is not a situation where PowerFam alleges merely that CIBanco was an innocent bank being used by a fraudulent actor or that a simple mistake in identity was made during the course of the wire transfer. Rather, PowerFam is alleging that CIBanco itself knew that it was being used for the purpose of defrauding individuals and companies, like PowerFam. Thus,

[1] The arguments in BNB's Response apply equally here.

PowerFam's claims against CIBanco rest outside of the UCC, as the claims do not simply involve the wire transfer process itself, but rather CIBanco's knowledge or complicity in the fraudulent activities that led to PowerFam wiring money into CIBanco's correspondent account.

Furthermore, PowerFam's Complaint specifically alleges actions taken by CIBanco in relationship to the funds. Namely, PowerFam alleges that the fraudulently obtained funds were sitting in CIBanco's Citibank account until Citibank interpleaded those same funds into the Court. Intervenor's Complaint at ¶¶ 9-10. Should this Court release the funds back to CIBanco, then CIBanco will be unjustly holding funds that it knows were stolen from PowerFam. No provision of Article 4A addresses whether a beneficiary may keep, as against the defrauded originator, funds it knew or should have known were procured by fraud, and a claim that it may not imposes no liability inconsistent with the article. *See* Moody, 46 S.W.3d at 378.

When taking all of the allegations in the light most favorable to the intervenor, PowerFam's allegations are not preempted by the UCC. *Baker*, 75 F.3d at 196.

**B. <u>PowerFam states a plausible claim against CIBanco.</u>**

CIBanco claims PowerFam failed to meet the Rule 8 pleading standards. But Rule 8 simply requires that PowerFam make a short and plain statement of the claim showing that it is entitled to relief. *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). PowerFam specifically and unambiguously pled claims for money had and received as well as unjust enrichment against CIBanco.

CIBanco's argument seems to misunderstand the claims alleged against it. PowerFam's causes of action are, essentially, about who has greater title to the stolen funds that now sit in the registry of the court. PowerFam alleges that, until the funds were interpleaded, CIBanco *was holding* money that is rightfully PowerFam's. Intervenor's Complaint at ¶ 10. That is the heart of



#172890

claims for money had and received and unjust enrichment. PowerFam only alleges that the funds were received *into* CIBanco's account per the fraudulently-obtained wiring instructions. *Id.* at ¶¶ 7-8. PowerFam alleges that CIBanco maintained possession of those funds in its Citibank account until they were interpleaded. *Id*. at ¶¶ 9-10. Those funds now sit in the registry of the Court. *Id.* Should those funds be directed back into the hands of CIBanco, then CIBanco will continue to hold money that it has no right to hold, leading to it being unjustly enriched.

CIBanco also argues that this Court should ignore PowerFam's allegation that CIBanco knew or should have known that CIBanco was being used to perpetrate fraud. But CIBanco fails to explain *why* the Court should ignore this fact as pled, given that well-established precedent requires this Court to take all of the facts in the light most favorable to PowerFam. *Baker*, 75 F.3d at 196. CIBanco asks this Court to simply assume that it is not aware of how the funds came into its account, and also that they should not be held accountable for what they now know should those same funds be returned. Neither assumption is in keeping with the requirements of Rule 12(b)(6).

### C. <u>PowerFam's Complaint is not required to meet the pleading standards required by Federal Rule of Civil Procedure 9(b).</u>

CIBanco next claims that PowerFam fails to meet the heightened pleading standards required by Federal Rule of Civil Procedure 9(b). But once again, CIBanco's arguments are based on a fundamental misunderstanding of the claims being pled by PowerFam.

PowerFam's claims are to the money held in the registry of this Court, based on a superior title to the funds. PowerFam's central claim is that CIBanco improperly received *and retained* funds stolen from PowerFam. A money had and received claim "is not premised on wrongdoing; it only looks to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another." *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ). Similarly, "[u]njust enrichment occurs when the person sought to be

charged [has] wrongfully secured a benefit or [has] passively received one which it would [be] unconscionable to retain." *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App.—San Antonio 2004, pet. denied) (*quoting City of Corpus Christi v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247, 250 (Tex. App.—Corpus Christi 1987, writ denied)). Intervenor does not have to demonstrate the elements of fraud to make a claim for money had and received or unjust enrichment. Rather, PowerFam need only plead that CIBanco wrongly secured a benefit. PowerFam has pled that CIBanco wrongfully received funds into its account maintained at Citibank, and that its retention of those funds is unjust. The "gravamen of the claim" is not the fraud that led to the unjust acceptance of funds, but rather the unjust retention of those funds; therefore, PowerFam should not be held to the pleading standards outlined in Rule 9(b). *See Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998) ("The Rule 9(b) pleading standard is required . . . where the gravamen of the claim is fraud even though the theory supporting the claim is not technically fraud."). Rule 8 pleading rules should apply, and, as established, PowerFam has met those standards.

But, even if Rule 9(b) governs PowerFam's complaint in intervention, PowerFam meets the pleading threshold. Under Rule 9(b), plaintiffs must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* PowerFam has met this standard.

PowerFam pled that a fraudulent actor tricked it into wiring money to a Citibank account owned by CIBanco by sending it false wiring information, that the money sent to CIBanco's account is stolen, and that the money rightfully should be returned to PowerFam, as the true owner of the funds. Intervenor's Complaint ¶¶ 6-9. PowerFam provided the date of the wire transfer, the

originating bank (BNB), the receiving bank (Citibank), and the beneficiary of the transfer (CIBanco). *Id.* PowerFam provided information regarding the fraudulent means by which the wire transfer was procured, and how CIBanco came to take possession of the funds. *Id.* These factual allegations are pled with sufficient particularity to meet the standards articulated in Rule 9(b).

CIBanco's complaints about the lack of particularity further underscore the need for continued discovery in this case. As outlined in BNB's response to CIBanco's Motion to Dismiss its claims, banks like CIBanco are held to exacting regulations that require it to maintain procedures to identify its customers and collect certain information about their customers. BNB Response, Dkt. 30 at ¶¶ 36-38. CIBanco is the keeper of information that would be needed to identify the individual who initiated the wire transfer. CIBanco is the keeper of information regarding the extent to which it knew that individual was engaged in fraud. CIBanco seeks to avoid discovery in order to protect the identity of the fraudster in this case, which only bolsters PowerFam's pleaded facts indicating that CIBanco knows—and should have known prior to the circumstances leading to this case—that it was being used to perpetrate a fraud. Indeed, CIBanco continues to refuse to divulge the identity of the fraudulent actor or what actions CIBanco has taken to comply with banking regulations.[2]

PowerFam believes that discovery will uncover that CIBanco knew the wire transfer was likely fraudulent. That belief is consistent with PowerFam's pleadings. This Court should not dismiss PowerFam's complaint before it has had a chance to engage in discovery.

[2] Indeed, over the course of discovery in this case, CIBanco has simply refused to answer PowerFam's requests, claiming that Mexican banking laws shield it from identifying the intended beneficiary of the stolen funds or even what steps CIBanco takes to ensure that it is not assisting fraudulent transfer.

**D. <u>In the alternative, PowerFam requests leave to file a first amended complaint to cure any defects.</u>**

As explained above, PowerFam has adequately pled each of its causes of action sufficient to survive Rule 12(b) scrutiny. However, should the court be inclined to grant Defendant's Motion to Dismiss in whole or in part due to pleading deficiencies, PowerFam hereby requests leave to file a First Amended Complaint in Intervention. PowerFam has not previously amended its complaint in intervention, and leave to amend is favored in this Circuit, unless there is evidence of "undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 770 (5th Cir. 1999). None of those facts are present here, so PowerFam respectfully requests that this Court grant it leave to amend should the motion be granted in whole or in part. If the Court finds any claim insufficiently pleaded, PowerFam would amend to plead additional facts concerning CIBanco's role in the funds transfer and its knowledge of the fraud, including the June 25, 2025 order of the Financial Crimes Enforcement Network of the U.S. Department of the Treasury finding CIBanco to be of primary money laundering concern in connection with illicit opioid trafficking. *See* Imposition of Special Measure Prohibiting Certain Transmittals of Funds Involving CIBanco S.A., Institución de Banca Multiple, 90 Fed. Reg. 27,770 (June 30, 2025). That order, which took effect October 20, 2025, provides that "[a] covered financial institution is prohibited from engaging in any transmittal of funds from or to CIBanco." *Id.* at 27,777; see 90 Fed. Reg. 30,826 (July 11, 2025); 90 Fed. Reg. 40,974 (Aug. 22, 2025) (extending the effective date). FinCEN amended the order on April 16, 2026, but only to authorize transmittals "ordinarily incident and necessary for the Government of Mexico to liquidate CIBanco," and only where the Government of Mexico's appointed liquidator has determined the transmittal necessary; the prohibition otherwise remains in force. Imposition of Special Measure Prohibiting Certain

Transmittals of Funds Involving CIBanco S.A., Institución de Banca Multiple; Amendment, 91 Fed. Reg. 20362 (Apr. 16, 2026). In the same amendment, FinCEN recited that the Government of Mexico has taken over CIBanco's management and overseen the sale of its major assets. *Id.* These findings bear directly on the plausibility of PowerFam's allegation that CIBanco knew or should have known that its account was being used to receive fraudulently obtained funds.

## V. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff/Intervenors, Lois and James Kolkhorst d/b/a PowerFam Washes, LLC respectfully requests the Court: (1) deny Defendant, CIBanco, S.A.'s Motion to Dismiss PowerFam Washes, LLC's Original Complaint in Intervention, and (2) award PowerFam Washes, LLC its reasonable and necessary attorneys' fees and costs in connection with responding to Defendant's motion, and (3) award PowerFam Washes, LLC all other relief to which it is entitled.

Respectfully submitted,

*_/s/ David M. Prichard_*

David M. Prichard
State Bar No. 16317900
(210) 477-7401 [Direct]
dprichard@pomllp.com
PRICHARD OLIVER MONTPAS, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 [Telephone]

and

Kent Hance
State Bar No. 08881000
khance@hslawmail.com
HANCE SCARBOROUGH LLP
203 W. 10th Street
Austin, TX 78701

(512) 479-8888

***ATTORNEYS FOR INTERVENORS LOIS AND JAMES KOLKHORST d/b/a POWERFAM WASHES, LLC***

**CERTIFICATE OF SERVICE**

I hereby certify that on the **25th day of September 2026**, I served ***PowerFam Washes, LLC's Response to Defendant, Cibanco S.A.'s Motion to Dismiss PowerFam Washes, LLC's Original Complaint in Intervention*** on all known counsel of record in a manner authorized by the Federal Rules of Civil Procedure.

William P. Huttenback
Greg S. DeVries
CRAIN, CATON & JAMES, PC
1401 McKinney, Suite 1700
Houston, TX 77010-4035
phuttenback@craincaton.com
gdevries@craincaton.com
***Counsel for Plaintiff, Brenham National Bank***

John S. Edwards, Jr.
AJAMIE LLP
711 Louisiana Street, Suite 1600
Houston, TX 77002
jedwards@ajamie.com
***Counsel for Cibanco***

*/s/ David M. Prichard*
David M. Prichard