**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **BRENHAM NATIONAL BANK,** *Plaintiff,* | § | |
| **LOIS AND JAMES KOLKHORST D/B/A POWERFAM WASHES, LLC** *Plaintiff/Intervenor*, | § | **CIVIL ACTION NO. 1:25-CV-00263-ABD** |
| **v.** | § | |
| **CIBANCO S.A.,** *Defendant* | § | |

**DEFENDANT CIBANCO S.A.'S REPLY**
**IN SUPPORT OF ITS MOTION TO DISMISS**
**POWERFAM WASHES, LLC'S ORIGINAL COMPLAINT IN INTERVENTION**

# TABLE OF CONTENTS

I. ARGUMENTS & AUTHORITIES .......... 2

A. Powerfam's claims are displaced by the exclusive remedies in UCC Article 4A.......... 2

1. Article 4A was specifically drafted to preempt common-law claims. .......... 2

2. Ucc section 4A.207 applies to allegations—like those in the complaint—that an imposter provided fraudulent instructions.......... 4

3. Powerfam mistakenly relies on inappropriate ucc provisions and caselaw that fail to rebut article 4A's applicability. .......... 6

B. Powerfam fails to state a claim under *twombly/iqbal* that is plausible. .......... 7

C. The complaint sounds in fraud and is thus subject to rule 9(b), but it nonetheless fails to meet rule 9(b)'s standards. .......... 9

D. Leave to amend should be denied because it would be futile. .......... 10

II. CONCLUSION .......... 10

## TABLE OF AUTHORITIES

### Cases

*Abira Med. Labs., LLC v. Aetna, Inc.*, No. 3:24-CV-00931 (SVN), 2025 U.S. Dist. LEXIS 23227 (D. Conn. Feb. 10, 2025) ........ 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 7, 8

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ........ 7, 8

*Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762 (5th Cir. 2019) ........ 8

*Commonwealth Land Title Ins. Corp. v. Regions Bank,* 2008 Fla. Cir. LEXIS 3136 (11th Jud. Cir. 2008) ........ 7

*Consorcio Indus. de Construccion Titanes, S.A. de C.V. v. Wells Fargo Bank, N.A.*, No. 3:10-CV-2111-K, 2012 U.S. Dist. LEXIS 200382 (N.D. Tex. Jul. 12, 2012) ........ 7

*Curb Planet, Inc. v. Wells Fargo Bank*, No. 4:20-CV-2233, 2022 WL 4486412 (S.D. Tex. Sept. 2, 2022) ........ 7

*Diaz v. FCA United States LLC*, 693 F. Supp. 3d 425 (D. Del. 2023) ........ 9

*Fitts v. AmSouth Bank,* 917 So.2d 818 (Ala. 2005) ........ 5

*Frith v. Guardian Life Ins. Co. of Am*., 9 F. Supp. 2d 734 (S.D. Tex. 1998) ........ 9

*Gilbert v. Wells Fargo Bank, N.A.,* 698 F. Supp. 3d 844 (D.S.C. 2023) ........ 4, 5

*Hernandez v. Ventura Sys LLC*, No. 3:23-CV-2244-D, 2024 U.S. Dist. LEXIS 24773 (N.D. Tex. Feb. 13, 2024) ........ 9

*In re Amberson*, 54 F.4th 240 (5th Cir. 2022) ........ 3

*Mitchell Energy Corp. v. Martin*, 616 F. Supp. 924 (S.D. Tex. 1985) ........ 10

*Moody Nat'l Bank v. Texas City Dev. Ltd.*, Co., 46 S.W.3d 373 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) ........ 4

*Peerless Ins. Co. v. Tex. Commerce Bank-New Braunfels, N.A.*, 791 F.2d 1177 (5th Cir. 1986) ........ 7

*Ross v. Bank of Am. N.A.,* 693 F. Supp. 2d 692 (S.D. Tex. 2010) ........ 7

*Schlegel v. Bank of Am., N.A.,* 628 S.E.2d 362 (Va. 2006) ........ 5

Serviacero Especiales SA DE CV v. JPMorgan Chase Bank, N.A., No. EDCV 21-380 JGB, 2021 WL 4805447, 2021 U.S. Dist. LEXIS 202524 (C.D. Cal. May 20, 2021) ................................ 4

*Stone v. First City Bank of Plano, N.A.*, 794 S.W.2d 537 (Tex. App.—Dallas 1990, writ denied)......................................................... 7

*U.S. Steel Corp. v. Summit Inc.,* No. 2:24-CV-126-GSL-JEM, 2025 U.S. Dist. LEXIS 177841 (N.D. Ind. Sep. 11, 2025) ........................................................................................ 8

*Valley Chili Props., LLC v. Truist Bank*, No. EP-23-CV-420-KC, 2024 U.S. Dist. LEXIS 131992 (W.D. Tex. Jun. 27, 2024)...................................................................................... passim

*Villarreal v. First Presidio Bank*, 283 F. Supp. 3d 548 (W.D. Tex. 2017) .................................. 7

*Wright v. Citizen's Bank of E. Tenn.,* 640 F. App'x 401 (6th Cir. 2016) ..................................... 3

*Zengen, Inc. v. Comerica Bank,* 59 Cal.Rptr.3d 240 (Cal. 2007)......................................... 2, 4, 5

**Statutes**

TEX. BUS. & COM. CODE § 1.103 .............................................................................................. 2

TEX. BUS. & COM. CODE § 1.103(b) ...................................................................................... 2, 3

TEX. BUS. & COM. CODE § 3.102(a) ........................................................................................... 6

TEX. BUS. & COM. CODE § 3.118(g)(1)........................................................................................ 6

TEX. BUS. & COM. CODE § 4A.102 ............................................................................................. 4

TEX. BUS. & COM. CODE § 4A.207 ......................................................................................... 4, 5

*PowerFam Washes, LLC's Response to Defendant CIBanco S.A.'s Motion to Dismiss PowerFam Washes, LLC's Original Complaint in Intervention* ("Response") (ECF No. 83) shows that the Motion (ECF No. 82) should be granted.

First, the Response concedes that PowerFam's claims all arise from a wire transfer that was allegedly fraudulently procured. But the Complaint (ECF No. 79) fails to bring a cause of action under Article 4A of the Uniform Commercial Code as required to recover the wire transfer. PowerFam relies on inapplicable UCC sections, but cannot rebut the irrefutable principle that Article 4A preempts common-law claims concerning wire transfers.

Second, PowerFam fails to argue that its claims against CIBanco are plausible under the *Twombly/Iqbal* pleading standard. In fact, the Response ignores *Twombly/Iqbal* altogether. PowerFam attempts to evade Article 4A by relying on the Complaint's statement that CIBanco "obtained the transferred funds by fraud or by taking undue advantage when it, on information and belief, knew or should have known that the funds were transferred on behalf of an individual seeking to defraud PowerFam." Response, p. 6 (citing Complaint, ¶ 16). But this statement is a legal conclusion—not a factual allegation. Under *Twombly/Iqbal*, the Court should not credit this bare-bones legal conclusion in deciding the Motion. Based on the factual allegations in the Complaint, PowerFam's causes of action against CIBanco are speculative, not plausible

Third, the Response tries to distance PowerFam's causes of action from Rule 9(b)'s pleading standards for claims sounding in fraud. Yet the Response and Complaint use the term "fraud" (or some derivation thereof) many times. PowerFam was thus required to plead specific *facts* showing both that CIBanco's customer was the fraudster and that CIBanco knew its customer was the fraudster. But the Complaint fails to do so.

# I. ARGUMENTS & AUTHORITIES

The Court should dismiss the Complaint with prejudice because PowerFam's claims against CIBanco (1) are preempted by Article 4A of the Uniform Commercial Code ("UCC"); (2) are not plausible under Rule 8 and the *Twombly/Iqbal* pleading standard; and (3) do not plead fraud or mistake with particularity as required by Rule 9(b). Leave to amend should be denied because amendment would be futile.

## A. PowerFam's claims are displaced by the exclusive remedies in UCC Article 4A.

PowerFam's only way to recover the wire transfer is through Article 4A of the UCC, but it failed to bring any claim under Article 4A. PowerFam instead misconstrues and conflates other UCC provisions. But none of PowerFam's arguments negate Article 4A's unmistakable purpose of displacing common-law claims.[1]

### 1. Article 4A was specifically drafted to preempt common-law claims.

PowerFam begins its misplaced argument against Article 4A's preclusive effect by citing the UCC's general provisions from Article 1 that note the UCC is "supplement[ed]" by the common law. *See, e.g.*, Response, p. 3 (citing TEX. BUS. & COM. CODE § 1.103(b)). PowerFam also cites the Official Comments to this section noting that the "UCC was drafted against the backdrop of existing bodies of law, including the common law and equity." *Id.* (citing TEX. BUS. & COM. CODE § 1.103 cmt. 2). But PowerFam ignores the initial clause, which states that the

[1] CIBanco uses the words "preempt" and "displace" interchangeably herein and in the Motion, as do many court decisions. CIBanco acknowledges the strict technical distinction but uses each term to refer to displacement of other provisions of state law. *Zengen, Inc. v. Comerica Bank,* 59 Cal.Rptr.3d 240, 244 n.5 (Cal. 2007) ("[P]arties sometimes use the word 'preempt' rather than 'displace' in discussing what effect the [UCC] has on the other causes of action. Technically, the doctrine of preemption concerns whether a federal law has superseded a state law or a state law has superseded a local law, not whether one provision of state law has displaced other provisions of state law.").

common law supplements the UCC, "*[u]nless displaced by the particular provisions of this title*." TEX. BUS. & COM. CODE § 1.103(b) (emphasis added). And Article 4A—which specifically addresses funds transfers—unambiguously displaces common-law principles. *Wright v. Citizen's Bank of E. Tenn.,* 640 F. App'x 401, 406-07 (6th Cir. 2016).

Article 4A's Official Comments[2] explain how Article 4A was specifically crafted on a "clean slate" that does not incorporate common-law principles:

> Before this Article was drafted there was no comprehensive body of law—statutory or judicial—that defined the juridical nature of a funds transfer or the rights and obligations flowing from payment orders . . . Judges have had to resolve disputes by referring to general principles of common law or equity, or they have sought guidance in statutes such as Article 4 which are applicable to other payment methods. But attempts to define rights and obligations in funds transfers by general principles or by analogy to rights and obligations in negotiable instrument law or the law of check collection have not been satisfactory.
>
> In the drafting of Article 4A, *a deliberate decision was made to write on a clean slate and to treat a funds transfer as a unique method of payment to be governed by unique rules that address the particular issues raised by this method of payment*. A deliberate decision was also made to use precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and establish limits on liability, rather than to rely on broadly stated, flexible principles.

[2] *In re Amberson*, 54 F.4th 240, 257 (5th Cir. 2022) (noting that the UCC's Official Comments "serve as a valuable aid in construing the statutory language.").

TEX. BUS. & COM. CODE § 4A.102 cmt. 1 (emphasis added).[3] Article 4A's displacement of common-law claims has been consistently recognized by courts across the country.[4]

2. UCC Section 4A.207 applies to allegations—like those in the Complaint—that an imposter provided fraudulent instructions.

Section 4A.207 applies to this dispute. "Article 4A provides several situation-specific avenues to recover wrongly transferred funds." *Valley Chili Props., LLC v. Truist Bank*, No. EP-23-CV-420-KC, 2024 U.S. Dist. LEXIS 131992, at *8 (W.D. Tex. Jun. 27, 2024). Section 4A.207 is one such avenue, as it provides specific rights and liabilities when a funds transfer is made to an unintended beneficiary. TEX. BUS. & COM. CODE § 4A.207. Section 4A.207 specifies precisely who can be found liable and to whom if a beneficiary bank accepts a wire transfer sent to an unintended beneficiary. *See Valley Chili Props.*, 2024 U.S. Dist. LEXIS 131992, at *8. Titled "misdescription of beneficiary," this provision applies to situations where an individual provides fraudulent transfer instructions to the originator of the wire. *See Gilbert*, 698 F. Supp. 3d at 848 ("The *modus operandi* of fraudulently induced wire transfers is a payment order that pairs the name of the defrauded party [ ] with the fraudster's bank account number, *i.e.*, the payment order

[3] *See also Zengen,* 59 Cal.Rptr.3d at 252-53 ("Payments made by wire transfer . . . require a separate body of law that addresses the unique operational and policy issues presented by the method. It was therefore the intent of the drafters of Article 4A to provide a comprehensive body of law to govern the rights and obligations resulting from wire transfers." [quoting 4 Witkin, Summary of Cal. Law (10th ed. 2005) Negotiable Instruments, § 132, p. 505]).

[4] *See, e.g., Moody Nat'l Bank v. Texas City Dev. Ltd.*, Co., 46 S.W.3d 373, 378-79 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *Zengen,* 59 Cal.Rptr.3d at 53; *Gilbert v. Wells Fargo Bank, N.A.*, 698 F. Supp. 3d 844, 848 (D.S.C. 2023).

PowerFam argues that *Serviacero Especiales SA DE CV v. JPMorgan Chase Bank, N.A.*, No. EDCV 21-380 JGB, 2021 WL 4805447, 2021 U.S. Dist. LEXIS 202524 (C.D. Cal. May 20, 2021), is distinguishable because it involved a conversion claim. Response, p. 5. But the court in *Serviacero* dismissed the conversion claim because it was preempted by UCC Article 4A (specifically, California's codification of Section 4A.207 in California Commercial Code § 11207). 2021 U.S. Dist. LEXIS 202524, at *4-6.

misdescribes the beneficiary.”). And as described in the Motion, the hypothetical from the Official Comments to Section 4A.207 illustrates the statute’s intent to reach scenarios involving an imposter fraudulently directing the originator to transfer funds to the imposter’s account. Motion, p. 7 (describing TEX. BUS. & COM. CODE § 4A.207 cmt. 2). PowerFam’s Response ignores the Official Comment’s clear illustration of Section 4A.207’s application to the facts alleged in the Complaint. And beyond the UCC’s official commentary, cases from coast to coast have applied Section 4A.207 to similar allegations involving an imposter providing fraudulent wire instructions to the originator of a wire transfer.[5]

The case of *Valley Chili Properties, LLC v. Truist Bank* is instructive. There, like here, “an unknown fraudster” provided the originator information to transfer funds to the fraudster’s account instead of the intended beneficiary. 2024 U.S. Dist. LEXIS 131992, at *2-3. The originator’s bank sent funds as directed to the fraudster’s bank (i.e., the beneficiary bank), which then deposited funds into the fraudster’s account. *Id.* at *3. After discovering the funds were not sent to its intended beneficiary, the originator demanded return of the funds from the fraudster’s bank. *Id.*

---

[5] *See, e.g., Zengen,* 59 Cal.Rptr.3d at 244 (in case involving sender’s employee embezzling $4.6 million by directing sender’s transfers to his own account, California Supreme Court held that because “the California Code provides detailed rules and procedures concerning funds transfers that squarely cover the transactions at issue, we conclude that the California Code does displace common law causes of action.”); *Gilbert*, 698 F. Supp. 3d at 849-50 (applying Article 4A.207 to preempt common-law claims against Wells Fargo in case involving “a scammer, pretending to be a Wells Fargo agent” who provided plaintiff with fraudulent instructions to wire funds to its own account at Wells Fargo); *Fitts v. AmSouth Bank,* 917 So.2d 818, 824 (Ala. 2005) (holding that “[b]ecause the situation made the basis of the Fittses’ common-law claims—that AmSouth made an improper funds transfer—is unequivocally addressed in the particular provisions of Article 4A, we conclude that those common-law claims are displaced by Article 4A,” and that the “exclusive remedy for that claim must be found in Article 4A”); *Schlegel v. Bank of Am., N.A.,* 628 S.E.2d 362, 362 (Va. 2006) (holding that Article 4A displaced common-law claims in case that “involves a funds transfer made pursuant to alleged unauthorized payment orders and the receiving bank’s subsequent freezing of the transferred funds without refunding them to the customer's account.”).

There, also like here, the originator asserted common-law claims for unjust enrichment and money had and received (among others) instead of a claim under Article 4A. *Id.*

The court in *Valley Chili Props.* found that the case was governed by Section 4A.207 and dismissed the common-law claims asserted against the beneficiary bank as preempted. *Id.* at *12 ("Article 4A explicitly governs the post-transfer recovery process, by providing a careful system for orchestrating the return of funds after a transfer has already gone awry . . . Therefore, Article 4A preempts Plaintiff's common-law claims, which would backdoor the system set forth in the UCC."). The court concluded that, "under Article 4A's 'precise and detailed rules,' the only person from whom Plaintiff may directly recover the transferred funds is the unnamed fraudster." *Id.* at *11 (internal citation omitted). The same is true here. PowerFam failed to assert any claims under Section 4A.207—let alone one directed at the fraudster—so its claims must be dismissed.

3. <u>PowerFam mistakenly relies on inappropriate UCC provisions and caselaw that fail to rebut Article 4A's applicability.</u>

Faced with the reality that Article 4A expressly covers its claims, PowerFam points to irrelevant provisions from other Articles of the UCC. Specifically, argues argues that the UCC cannot preempt money had and received claims because Section 3.118(g)(1) "provides for a separate statute of limitations for a money had and received claim." ECF No. 30, p. 4. But Section 3.118(g)(1) comes from Article 3 of the UCC (dealing with "negotiable instruments"), *not* Article 4A (dealing with funds transfers). The provisions of Article 3 expressly *do not apply* to Article 4A. *See, e.g.,* TEX. BUS. & COM. CODE § 3.102(a) ("This chapter applies to negotiable instruments. It does not apply to . . . payment orders governed by Chapter 4A."). In fact, the text of Section 3.118(g)(1) expressly cabins the separate statute of limitations for the enumerated claims to actions on an "instrument," which is defined in Article 3. TEX. BUS. & COM. CODE § 3.118(g)(1). This section does not apply to funds transfers, which are exclusively governed

by Article 4A, which preempts money had and received claims. *See, e.g., Valley Chili Props.*, 2024 U.S. Dist. LEXIS 131992, at *15 ("Plaintiff's common-law claims for money had and received, restitution, unjust enrichment, constructive trust, and negligence are preempted by Article 4A.").

PowerFam conflates different articles of the UCC throughout its Response. Indeed, nearly all the cases it cites involve sections other than Article 4A, such as Article 3 (negotiable instruments) or Article 4 (bank deposits).[6] None apply to funds transfers. *See Commonwealth Land Title Ins. Corp. v. Regions Bank,* 2008 Fla. Cir. LEXIS 3136, at *12-13 (11th Jud. Cir. 2008) (describing that a payment order for funds transfers governed by Article 4A "is not like a negotiable instrument" that is governed by Article 3).

PowerFam's reliance on *Consorcio Indus. de Construccion Titanes, S.A. de C.V. v. Wells Fargo Bank, N.A.*, No. 3:10-CV-2111-K, 2012 U.S. Dist. LEXIS 200382 (N.D. Tex. Jul. 12, 2012)—is misplaced. Although the court in *Consorcio* recognized the preemptive effect of Article 4A on claims arising from wire transfers, 2012 U.S. Dist. LEXIS 200382, at *4-5, the court denied summary judgment because the plaintiff's claims involved defendant's actual knowledge of the mistaken transfer and a separate, non-wire transaction in which defendant made an improper set off against a debt owed to defendant. *Id.* The Complaint alleges no such facts.

B. PowerFam fails to state a claim under *Twombly/Iqbal* that is plausible.

The Response ignores the seminal pleading cases of *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). These cases require that, in order to

[6] *See, e.g., Ross v. Bank of Am. N.A.,* 693 F. Supp. 2d 692, 693 (S.D. Tex. 2010) (involving negotiable instruments under Article 3); *Peerless Ins. Co. v. Tex. Commerce Bank-New Braunfels, N.A.*, 791 F.2d 1177 (5th Cir. 1986) (same); *Curb Planet, Inc. v. Wells Fargo Bank*, No. 4:20-CV-2233, 2022 WL 4486412 (S.D. Tex. Sept. 2, 2022) (same); *Stone v. First City Bank of Plano, N.A.*, 794 S.W.2d 537 (Tex. App.—Dallas 1990, writ denied) (same); *Villarreal v. First Presidio Bank*, 283 F. Supp. 3d 548 (W.D. Tex. 2017) (involving wrongful dishonor of a certificate of deposit under Article 4).

survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But a court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citation omitted). And the facts alleged "must be enough to raise a right to relief above the speculative level." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555).

The Response fails to distinguish between the "legal conclusions" and "factual allegations" in PowerFam's Complaint. As stated in the Motion, the Court should ignore the Complaint's statement that, "on information and belief," CIBanco "knew or should have known that the funds were transferred on behalf of an individual seeking to defraud PowerFam," because that statement is a legal conclusion. Motion, p. 9 (quoting Complaint, ¶ 16). As explained in the Motion, PowerFam pleads no *facts* showing that CIBanco "knew or should have known" that the funds were transferred on behalf of the fraudster, that CIBanco's customer was the fraudster, that CIBanco knew who the fraudster was at the time of the wire transfer, or that CIBanco knows who the fraudster is today. Motion, p. 9. Courts routinely hold that, under *Twombly/Iqbal*, statements that a defendant "knew or should have known" something must be supported by factual allegations showing that the statement is plausible.[7] Under *Twombly/Iqbal*, PowerFam's claims against CIBanco are not plausible.

[7] *See U.S. Steel Corp. v. Summit Inc.*, No. 2:24-CV-126-GSL-JEM, 2025 U.S. Dist. LEXIS 177841, at *12 (N.D. Ind. Sep. 11, 2025) (dismissing claims where plaintiff failed to allege "facts that plausibly suggest Defendants knew or should have known" they needed to exercise control

C. The Complaint sounds in fraud and is thus subject to Rule 9(b), but it nonetheless fails to meet Rule 9(b)'s standards.

PowerFam acknowledges that the "Rule 9(b) pleading standard is required . . . where the gravamen of the claim is fraud even though the theory supporting the claim is not technically fraud." ECF No. 83, p. 9 (quoting *Frith v. Guardian Life Ins. Co. of Am*., 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998)). Yet PowerFam argues that Rule 9(b) is inapplicable because the "gravamen" of its claims is "not the fraud that led to the unjust acceptance of funds, but rather the unjust retention of those funds." Response, p. 9. To the extent that is a meaningful difference, however, PowerFam was nevertheless still required to allege facts showing CIBanco's retention of the funds was unjust because CIBanco "knew or should have known that the funds were transferred on behalf of an individual seeking to *defraud* PowerFam." Complaint, ¶ 16 (emphasis added). As explained above, PowerFam failed to do so. Because the (alleged) unjust retention was based on the fraudulent wire instructions, PowerFam was required to allege fraud with particularity. But as described in the Motion, the Complaint fails to identify (i) *who* provided its customer the allegedly fraudulent wiring instructions, (b) *when* the supposedly fraudulent wiring instructions were provided to its customer, and (c) *where* this occurred. ECF No. 6, p. 10.

Recognizing these pleading deficiencies, PowerFam requests "a chance to engage in discovery," which it "believes" will uncover that CIBanco "knew the wire transfer is likely

---

over their employees to prevent theft); *Abira Med. Labs., LLC v. Aetna, Inc*., No. 3:24-CV-00931 (SVN), 2025 U.S. Dist. LEXIS 23227, at *24-25 (D. Conn. Feb. 10, 2025) (dismissing claims where plaintiff offered "few, if any, allegations to make plausible the proposition that Defendants knew or should have known" a statement was false); *Diaz v. FCA United States LLC*, 693 F. Supp. 3d 425, 436 n.20 (D. Del. 2023) (dismissing claims where plaintiffs failed to "plausibly plead" that defendant "knew or should have known" about product defect); *Hernandez v. Ventura Sys LLC*, No. 3:23-CV-2244-D, 2024 U.S. Dist. LEXIS 24773, at *8 (N.D. Tex. Feb. 13, 2024) (dismissing claim where plaintiffs failed to plead sufficient facts showing defendant "knew or should have known" that driver was incompetent or reckless).

fraudulent." Response, p. 10. But PowerFam has it backwards. In federal court, a plaintiff must plead a valid case first, then use discovery to flesh it out. Discovery is not meant to help a plaintiff determine whether they have a claim; it is meant to uncover the details of a case that has already been plausibly asserted. Indeed, an important purpose of Rule 9(b) is to "eliminate complaints filed as a pretext for discovery of unknown wrongs." *Mitchell Energy Corp. v. Martin*, 616 F. Supp. 924, 927 (S.D. Tex. 1985) (cleaned up). PowerFam should not be allowed to use discovery as a pretext to determine what claims, if any, it may have.

D. Leave to amend should be denied because it would be futile.

All common-law claims that PowerFam could assert against CIBanco are preempted by Article 4A of the UCC. Any Article 4A claim that PowerFam could assert would be proper only against the alleged fraudster. *Valley Chili Props.*, 2024 U.S. Dist. LEXIS 131992, at *11. In *Valley Chili Properties*, the court granted leave for the plaintiff to file a claim only against the alleged fraudster who provided the fraudulent wire instructions. *Id*. At most, this Court should do the same. But allowing PowerFam to replead against CIBanco would be futile.[8]

## II. CONCLUSION

The Court should grant the Motion and dismiss PowerFam's Complaint with prejudice. While PowerFam may have valid claims against the alleged fraudster, it has none against CIBanco. PowerFam's claims against CIBanco are preempted by the UCC, not plausible, and not pleaded with particularity. Further, leave to amend would be futile.

[8] PowerFam says it would amend its complaint to plead additional facts about an unrelated order of the Treasury Department related to money laundering and opioid trafficking. Response, pp. 11-12. But this order does not relate to fraudulent wire instructions, and this case does not relate to money laundering or opioid trafficking. Thus, whatever facts PowerFam might allege about this order would not make it plausible that CIBanco "knew or should have known" that the funds were transferred on behalf of an individual seeking to defraud PowerFam, or otherwise save the Complaint from dismissal.

Dated: October 2, 2026

Respectfully submitted,

*/s / John S. "Jack" Edwards, Jr.*

John S. "Jack" Edwards, Jr.
AJAMIE LLP
Texas Bar No. 24040851
Pennzoil Place - South Tower
711 Louisiana, Suite 1600
Houston, TX 77002
Telephone: (713) 860-1600
Facsimile: (713) 860-1699
jedwards@ajamie.com

**ATTORNEY FOR CIBANCO S.A.**

## CERTIFICATE OF SERVICE

I certify that on October 2, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send electronic notification of the filing to all counsel of record.

*/s/ John S. "Jack" Edwards, Jr.*
John S. "Jack" Edwards, Jr.