**FILED**
November 16, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: Christian Rodriguez
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

No. 1:25-cv-00263

**Brenham National Bank,**
*Plaintiff,*
v.
**Cibanco,**
*Defendant.*

## MEMORANDUM OPINION AND ORDER

Plaintiff, a Texas bank, and Intervenors, a Texas LLC, sued Defendant, a Mexican bank, because they transferred Defendant $360,801.37 based on allegedly fraudulent wiring instructions and want the money back. Defendant filed motions to dismiss Plaintiff and Intervenors' complaints. Defendant's motions to dismiss, ECF Nos. 26 and 82, are granted to the extent Intervenors' and Plaintiff's claims rely on either Defendant committing fraud or mistake or Defendant participating in a third party's fraud or mistake. The motions to dismiss are otherwise DENIED.

## BACKGROUND

Intervenors Lois and James Kolkhorst d/b/a PowerFam Washes, LLC ("Intervenors") were building a car wash when they directed their bank, Plaintiff Brenham National Bank ("BNB"), to send $360,801.37 to an account they thought belonged to an equipment supplier. BNB sent the money to Citibank, N.A., and Citibank deposited the funds into Defendant Cibanco N.A.'s ("Cibanco") account with Citibank. Unbeknownst to BNB or Intervenors, that account did not belong to the equipment supplier. Intervenors and BNB allege that a

fraudulent actor posing as the equipment supplier provided fraudulent wiring instructions so that the money was sent to the Cibanco account. Intervenors allege that Cibanco knew or should have known that the funds were transferred on behalf of an individual seeking to defraud Intervenors. BNB is silent as to Cibanco's knowledge of the alleged fraud.

Upon discovering this mishap, BNB contacted Citibank to demand the return of the funds. Citibank did not return the funds. BNB then filed an application for a temporary restraining order in state court. The state court granted the temporary restraining order and instructed Citibank to place a hold on the funds. The case was then removed to federal court.

Once in federal court, Citibank interpled the funds and deposited $360,801.37 into the Court's registry and Cibanco was joined as a defendant. BNB filed a supplement to its original petition addressing its claims against Cibanco and Citibank ("BNB's Supplemental Complaint"). Shortly thereafter, Citibank was dismissed from the lawsuit with prejudice pursuant to a joint stipulation of dismissal. Intervenors later intervened, asserting claims against Cibanco.

Cibanco moved to dismiss both BNB's Supplemental Complaint and Intervenors' Complaint in Intervention. The Court now considers both motions to dismiss.[1]

## Legal Standard

Rule 12(b)(6) entitles a defendant to dismissal when the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed R. Civ. P. 12(b)(6). When deciding a Rule 12(b)(6) motion, the Court must "accept all well-pleaded facts

[1] Cibanco is no longer pursuing the personal jurisdiction or venue arguments raised in its motion to dismiss BNB's Supplemental Complaint. ECF No. 49.

as true" and "view[] them in the light most favorable to the plaintiff." *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 177 (5th Cir. 2018) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

## ANALYSIS

Cibanco's motions to dismiss are granted in part and denied in part.[2] Defendants move to dismiss Intervenors' and BNB's claims because they are displaced by section 4A.207 of the Uniform Commercial Code ("UCC"), fail to state a claim for relief, and fail to state fraud with particularity. The first argument fails. Section 4A.207 does not displace Intervenors' and BNB's common law claims because neither party alleges a mismatch between the name and account number on the payment order. Absent a mismatch, the claims do not fall

---

[2] In Cibanco's motion to dismiss BNB's Supplemental Complaint, Cibanco attached a declaration by Roberto Pérez Estrada. ECF No. 26-1. BNB objected to Estrada's declaration. "In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). This does not include attachments to motions to dismiss, such as Estrada's declaration. Estrada's declaration is not referred to in BNB's or Intervenors' complaints and is not central to their claims. *See id.* at 498–99 (permitting the consideration of documents attached to a defendant's motion to dismiss when they are central to the plaintiff's claims). The Court thus does not consider Estrada's declaration.

under section 4A.207 and are not displaced. Cibanco's second and third arguments, however, succeed in part and fail in part. To the extent Intervenors' and BNB's claims rely on Cibanco committing fraud or mistake or participating in a third party's commission of fraud or mistake, they are subject to—and have not satisfied—Rule 8 or Rule 9(b)'s requirements. But to the extent Intervenors' and BNB's claims allege only that Cibanco passively received money that it is not entitled to retain, their claims pass Rule 8 muster and are not subject to Rule 9(b)'s heightened pleading standard.

## I. UCC § 4A.207 does not displace BNB's and Intervenors' common law claims.

"Common law claims are precluded when a claim would impose liability inconsistent with any of the [UCC's] provisions." *Moody Nat'l Bank v. Texas City Dev. Ltd., Co.*, 46 S.W.3d 373, 378 (Tex. App.—Houston [1st Dist.] 2001, pet. denied.). "Chapter 4 of the UCC establishes the rights and duties between banks and their customers regarding deposits and collections." *Peatwatuck Enters. v. Truist Bank*, 773 F. Supp. 3d 366, 370 (S.D. Tex. 2025) (citing TEX. BUS. & COM. CODE §§ 4.101–504). The rules "are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article." TEX. BUS. & COM. CODE ANN. § 4A.102 cmt. 1. "Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in [the] Article." *Id.* "A plaintiff is therefore restricted from bringing non-Article 4A claims when those claims 'create rights, duties and liabilities inconsistent with those stated in [Article 4A].'" *Peatwatuck*, 773 F. Supp. 3d at 370 (alteration in original) (quoting *Consorcio Indus. de Construccion Titanes, S.A. de C.V. v. Wells Fargo*

*Bank, NA*, No. 3:10-cv-2111-K, 2012 WL 13019678, at *2 (N.D. Tex. July 12, 2012)).

"But the UCC does not automatically eliminate the common law." *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 506 (5th Cir. 2014). "Unless displaced by the particular provisions of [the UCC], the principles of law and equity . . . shall supplement its provisions." *Id.* at 506–07 (quoting TEX. BUS. & COM. CODE § 1.103(b)). A common law claim is not preempted by the UCC when it and the relevant UCC section can be reconciled—for example, by incorporating the affirmative defenses provided by the UCC into the common law claim. *See id.* at 508; *see also Peerless Ins. Co. v. Texas Com. Bank-New Braunfels, N.A.*, 791 F.2d 1177, 1180 (5th Cir. 1986) (finding a different statute of limitations or additional defenses "does not require the displacement of the common law action altogether, but only requires that an action for money had and received accommodate the additional defenses provided by the Code").

UCC § 4A.207 creates a liability scheme governing what happens when a bank executes a payment order and the name and number provided on the payment order do not match. TEX. BUS. & COM. CODE § 4A.207. Under section 4A.207, who may recover and how they may recover depends on who the beneficiary of the payment order is, whether the beneficiary's bank knew that the name and number on the payment order did not match, and whether the beneficiary was entitled to the money. *Id.* at § 4A.207(b).

Section 4A.207 does not displace Intervenors' and BNB's common law claims because Intervenors and BNB do not allege that there was a mismatch between the name and numbers on the payment order. Intervenors allege that "[a] fraudulent actor posing as the equipment supplier provided fraudulent wiring instructions[,]" Intervenors "sent these wiring

instructions to BNB[,]" and "Citibank deposited the wired funds into C[ib]anco's account." Intervenors' Compl. at ¶¶ 6–8 (ECF No. 79). BNB similarly alleges that "[a] fraudster posing as the equipment supplier provided fraudulent wiring instructions so that the money would be sent to him or her rather than to the equipment supplier[,]" and that "[BNB] received [the] wiring instructions from its customer . . . and completed the wire transfer[.]" BNB's Suppl. Compl. at ¶¶ 5–6 (ECF No. 16).

The fact that the payment was sent to the wrong person does not mean that there was a mismatch between the name and number on the payment order. The alleged fraudster could just as easily have told Intervenors the wrong name and number for the payment—indeed, that is what BNB argues. BNB's Sur-Reply at ¶ 5 (ECF No. 35) ("This is not the case where the styling of an account does not match the account number of the account to which the funds are being sent and/or where numbers were transposed and did not match the number of the account intended to receive the funds."). Because Intervenors and BNB have not pled that the name and number on the payment order did not match, they have not pled a claim falling within section 4A.207. *See* TEX. BUS. & COM. CODE § 4A.207 (titled "Misdescription of Beneficiary"). And because section 4A.207 does not address the claims as currently pled, it does not displace them. *See Coastal Agric. Supply*, 759 F.3d at 506–07 (stating that common law supplements the UCC unless displaced by "particular provisions" of the UCC).

This is not to say that the UCC could never displace Intervenors' and BNB's claims. Cibanco, however, moved to dismiss Intervenors' and BNB's claims based on displacement under section 4A.207. If there was a mismatch, their claims may well be preempted. But there is no allegation of a

mismatch and Cibanco points to no other provisions of the UCC that conflict with Intervenors' and BNB's claims.

**II. BNB and Intervenors have plausibly pled claims not predicated on fraud or mistake.**

It is unclear to the Court precisely what theory of liability Intervenors and BNB assert. To the extent Intervenors' or BNB's claims are based solely on Cibanco's passive receipt of a benefit that it is allegedly not entitled to or that would be unjust to retain, their claims for money had and received and unjust enrichment are adequately pled. But to the extent that Intervenors' or BNB's claims rely either on Cibanco's knowledge of or acquiescence to third party fraud, or else Cibanco's own fraud or mistake, Intervenors and BNB have not adequately pled claims under Rule 8 or Rule 9(b).

To prove a claim for money had and received, the plaintiff needs to show only that the "defendant holds money which in equity and good conscience belongs to him." *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) (quoting *Staats v. Miller*, 243 S.W.2d 686, 687–88 (Tex. 1951)). Recovery does not require "reprehensible conduct by the defendant." *Id.* at 843. The Court "only asks 'whether the defendant holds money, which belongs to the plaintiff.'" *Allstate Indem. Co. v. Bhagat*, 164 F.4th 426, 436 (5th Cir. 2026) (quoting *Bank of Saipan*, 380 F.3d at 840).

Unjust enrichment is similar. "[U]njust enrichment is an equitable theory that allows a party to recover when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Id.* at 435 (quoting *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 665 (S.D. Tex. 2016) (citing *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992))). But as one Texas court has explained, "[f]raud, duress or the taking of an undue advantage are not

necessarily required elements of unjust enrichment, even though the doctrine 'is typically found to apply' under one of these scenarios." *Brooks v. Wycough*, 737 S.W.3d 690, 705 (Tex. App.—Tyler 2026, no pet.) (quoting *Walker v. Walker*, 631 S.W.3d 259, 266 (Tex. App.—Houston [14th Dist.] 2020, no pet.)). Unjust enrichment also occurs when the "person sought to be charged [has] wrongfully secured a benefit or [has] passively received one which it would [be] unconscionable to retain." *Bhagat*, 164 F.4th at 435 (alterations in original) (quoting *Allstate Ins.*, 190 F. Supp. 3d at 665).

Intervenors and BNB pled plausible claims for money had and received and unjust enrichment without alleging that Cibanco engaged in any wrongful activity. Intervenors pled that "[a] fraudulent actor posing as the equipment supplier provided fraudulent wiring instructions so that the money was sent to a C[ib]anco account[,]" that these funds were deposited in Cibanco's account, and that the funds rightfully belong to Intervenors. Intervenors' Compl. at ¶¶ 6, 8, 11. BNB pled that a fraudster provided Intervenors with fraudulent wiring instructions, Intervenors provided BNB with the wiring instructions, BNB completed the wire transfer, "the money was sent to Defendant Cibanco's account[,]" and the "funds rightfully belong to [BNB] and/or [Intervenors.]" BNB's Suppl. Compl. at ¶¶ 5–7, 15. These allegations satisfy Intervenors' and BNB's "minimal burden" to plead a money had and received claim and a claim for unjust enrichment. *Bhagat*, 164 F.4th at 436 (finding a plaintiff adequately pled a claim for unjust enrichment by alleging that the defendants fraudulently obtained a benefit that they had no right to retain); *Alexander O&G, LLC v. Nomad Land & Energy Res., LLC*, No. H-16-2965, 2017 WL 3506863, at *5 (S.D. Tex. Aug. 16, 2017) (denying a motion to dismiss a money had and received claim where counter-plaintiff alleged that counter-defendants

gave money that rightfully belonged to counter-plaintiff to the wrong party even when counter-defendants no longer had the money at issue). And despite Cibanco's argument to the contrary, BNB's pleadings adequately allege specific facts.

To be sure, BNB and Intervenors allege that a third-party committed fraud. But those allegations do not trigger Rule 9(b). Rule 9(b) requires parties, "[i]n alleging fraud or mistake, [to] state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "[W]hat triggers specific pleading for fraud claims is not the label attached to the claims but the substance of the allegations." *VeroBlue Farms USA, Inc. v. Wulf*, 465 F. Supp. 3d 633, 653 (N.D. Tex. 2020) (citing *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 369 (5th Cir. 2001) (refusing to apply Rule 9 because the "claims do not 'sound in fraud'")). An equitable claim sounds in fraud when the claims "rely on fraud allegations[.]" *Id.* at 653–54 ("Because VeroBlue's equitable claims rely on fraud allegations, the Court will include them in its assessment of whether the claims satisfy Rule 9."). But "the reasons for the particularity rule are not present when the fraud alleged is that of someone who is not a party to the action, and it has been held that in such a case the circumstances of the fraud or mistake need not be pleaded by the plaintiff with any special degree of particularity." 5A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1297 (4th ed. 2026); *see GE Cap. Com., Inc. v. Wright & Wright, Inc.*, No. 3:09-CV-572-L, 2009 WL 5173954, at *10 (N.D. Tex. Dec. 31, 2009) (declining to apply Rule 9(b) when the plaintiffs merely alleged that the defendants were the recipients of fraudulently obtained funds). BNB and Intervenors therefore did not need to plead the third-party fraud with any particularity in order to plausibly plead their money had and received and unjust enrichment claims against Cibanco.

Intervenors and BNB therefore also adequately pled claims for declaratory judgment. "When a declaratory judgment action filed in state court is removed to federal court, the federal court does not apply the Texas Declaratory Judgment Act." *Mid-Am. Supply Corp. v. Truist Bank*, 660 F. Supp. 3d 594, 601 (E.D. Tex. 2023) (quoting *Collins v. Nat'l Football League*, 566 F. Supp. 3d 586, 602–03 (E.D. Tex. 2021)); *Mesquite Asset Recovery Grp., L.L.C. v. City of Mesquite, Texas*, 154 F.4th 313, 318 (5th Cir. 2025) (noting that a claim for declaratory judgment "was converted to a claim under the federal Declaratory Judgment Act upon the case's removal to federal court"). "Instead, courts analyze claims under the federal Declaratory Judgment Act as the claim is 'in effect, converted into one brought under the federal Act.'" *Mid-Am. Supply*, 660 F. Supp. at 601 (quoting *Collins*, 566 F. Supp. 3d at 603).

"The Declaratory Judgment Act, which authorizes a federal court to 'declare the rights and other legal relations of any interested party seeking such declaration,' is merely a procedural device and does not create any substantive rights or causes of action." *Smitherman v. Bayview Loan Servicing, LLC*, 727 F. App'x 787, 792 (5th Cir. 2018) (per curiam) (quoting 28 U.S.C. § 2201(a)). "Rather, the viability of a party's request for declaratory relief is dependent on that party's ability to assert a viable substantive cause of action." *Mid-Am. Supply*, 660 F. Supp. 3d at 601–02 (citing *Collin County v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990) ("[I]t is the underlying cause of action . . . that is actually litigated in a declaratory judgment action[.]")). "This means that, when a party's underlying cause of action fails as a matter of law, its claim for declaratory relief necessarily fails as well." *Id.* at 602 (citing *Stallings v. CitiMortgage, Inc.*, 611 F. App'x 215, 217–18 (5th Cir. 2015) ("When the other claims have been dismissed, it is appropriate also to dismiss any

declaratory-judgment request.")). Because Intervenors and BNB sufficiently pled their common law causes of action, their declaratory judgment claims survive as well.

That all said, to the extent that Intervenors' and BNB's claims instead rely on Cibanco committing fraud or mistake or participating in third-party fraud or mistake, their claims fail under both Rules 8 and 9(b). Both claims are subject to Rule 9(b)'s pleading requirements. To the extent that Intervenors' or BNB's claims are that Cibanco obtained the funds by committing fraud or mistake, such a claim clearly falls within Rule 9(b)'s purview as the "substance of the allegations" is fraud or mistake. *VeroBlue Farms USA*, 465 F. Supp. 3d at 653; *see, e.g.*, *Marion v. Principal Life Ins. Co.*, No. H-23-0150, 2023 WL 5761287, at *4 (S.D. Tex. Sept. 6, 2023) (applying Rule 9(b) to a plaintiff's unjust enrichment claim that was based on allegations of defendant's forgery). Similarly, claims that Cibanco is liable because of its "silent acquiescence for the fraudulent misrepresentations of a third party[,]" sound in fraud as they effectively make Cibanco a participant in the fraud. *In re NE 40 Partners, Ltd.*, 411 B.R. 352, 361 (Bankr. S.D. Tex. 2009) (citation omitted) (applying Rule 9(b) to a third-party fraud claim); *see Visa Inc. v. Sally Beauty Holdings, Inc.*, 651 S.W.3d 278, 308 n.61 (Tex. App.—Fort Worth 2021, pet. denied) (explaining third party fraud liability and collecting cases).

Intervenors and BNB have not plausibly alleged facts showing Cibanco committed fraud or mistake, much less alleged "the who, what, when, where, and how" of any fraud or mistake. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (citation omitted). And while Rule 9(b) relaxes the particularity requirement for scienter, permitting "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally[,]" FED. R. CIV. P. 9(b),

Intervenors and BNB must still plead facts which allow the Court to reasonably infer a motive or conscious behavior taken to commit fraud, *Dorsey*, 540 F.3d at 339. Intervenors and BNB have not done so.

Cibanco's motions to dismiss are therefore granted to the extent Intervenors' and BNB's claims rely on Cibanco committing fraud or a mistake or silently acquiescing to a third party's fraud or mistake. Cibanco's motions to dismiss are otherwise denied.

**III. Intervenors and BNB are granted leave to replead.**

Intervenors and BNB both requested leave to replead in the event the Court dismissed their claims for pleading defects. ECF Nos. 30 at 33, 83 at 15. Leave to amend pleadings should be "freely give[n] . . . when justice so requires." *Clark v. Dep't of Pub. Safety & Corr.*, 141 F.4th 653, 661 (5th Cir. 2025) (alteration in original) (citing FED. R. CIV. P. 15(a)(2)). "[T]his Circuit examines five considerations to determine whether to grant a party leave to amend a complaint: 1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). The Court finds none of these factors present here. *See Clark*, 141 F.4th at 662 (requiring "substantial reasons" to deny leave to amend). Intervenors' and BNB's motions for leave to amend are granted.

## CONCLUSION

1. Defendant Cibanco's motions to dismiss, ECF Nos. 26 and 82, are GRANTED to the extent Intervenors' and BNB's claims rely on Cibanco committing fraud or mistake or participating in third-party

fraud or mistake. The motions to dismiss are otherwise DENIED.

**2.** Intervenors' and BNB's requests for leave to amend, ECF Nos. 30, 83, are GRANTED. Intervenors and BNB may file amended complaints on or before fourteen (14) days after the entry of this order.

*So ordered by the Court on November 16, 2026.*

ANDREW DAVIS
United States District Judge